In re:

                                                    Case
                        No. 20-10616CN
                        Chapter 11

TYLER LEASE MEIGGS,
_____/

### COMBINED PLAN OF REORGANIZATION

### AND  [TENTATIVELY APPROVED] DISCLOSURE STATEMENT
### January 18, 2022

**INTRODUCTION**

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan).  The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 100% of their allowed claims in monthly payments over 12 months.  Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan.  Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [date].  The court will hold a hearing on confirmation of the Plan on [date] at [time].

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation.  Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case.  Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation.  Exhibit 3 shows Debtor's monthly income and expenses.  Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan.  Exhibit 5

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 1 of 44

shows Debtor's monthly income and expenses related to each investment property.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

## PART 1: TREATMENT OF SECURED CREDITORS

**Creditors' Rights Remain Unchanged.**

| Class | Name of Creditor | Description of Collateral |
|---|---|---|
| 1A | Bank of the West | 2011 Ford Truck |
| 1B | Capital One Bank | 2014 Ford Truck |
| 1C | Mark Curran | Plot 8E Two Friends Rd., Christiansted, VI |
| 1D | County of Sonoma Lien* | 23480 Fort Ross Road, Cazadero, CA, 1460 Big Barn, Cazadero, 27951 King Ridge Rd, Cazadero, CA |
| 1E | Drew Wanko | 23480 Fort Ross Road, Cazadero, CA |
| 1F | Steve Ginesi | 1460 Big Barn, Cazadero, CA |
| 1G | Sonoma County Tax Collector (real property taxes)* | 1460 Big Barn, Cazadero, CA |
| 1H | Sonoma County Tax Collector (real property taxes)* | 23480 Fort Ross Rd., Cazadero, CA |
| 1I | Sonoma County Tax Collector (real property taxes)* | 27951 King Ridge Rd., Cazadero, CA |

Individual Chapter 11
Combined Plan & Disclosure Statement (Version: 7/30/12)

-2-

July 30, 2012

*The County of Sonoma has a judgment lien against the Debtor pursuant to a Stipulated Judgment and Permanent Injunction dated July 26, 2021 (the "Stipulated Judgment"), a true and correct copy of which is attached hereto.  The County of Sonoma's judgment lien is in the principal amount of $600,000.00 plus interest (the "Judgment Lien") for violations assessed against the three Sonoma county properties.  A portion of the Judgment Lien may, under law, be added to the real property tax rolls, and assessed as a priority real property tax lien which would give the lien priority over the deeds of trust against the respective properties.  With respect to the Debtor's properties, the amounts so assessed by the County are $19,401.40 as to the Big Barn property, $11,625.50 as to the Fort Ross Rd. property, and $16,928.50 as against the King Ridge property. The portion of County of Sonoma's secured priority real property tax claim under Class 1D arising from the $600,000.00 judgment lien ($19,401.40 for the Big Barn Property, $11,625.50 for the Fort Ross Rd. Property and $16,928.50 for the King Ridge Property) is not to be confused with the Sonoma County Tax Collector's separate secured real property claims under Class 1G, 1H and 1I as reflected in its proof of claim designated on the claims register as claim no. 8-1 in the total sum of $55,300.68 as of the petition date.  The Sonoma County Tax Collector, a secured creditor in Class 1G, 1H and 1I, shall be entitled to 1 ½% monthly statutory interest pursuant to California Revenue and Taxation Code § 4103 and any other penalties, fees or costs under applicable state law until all property taxes are paid in full.


     These creditors' legal, equitable, and contractual rights remain unchanged with respect to the above collateral.  The confirmation order will constitute an order for relief from stay. Creditors in these classes shall retain their interest in the collateral until paid in full.  **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**


**PART 2:  TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a).  General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] Payment |
|---|---|---|---|---|
| Wells Fargo Bank | 5,642.44 | N | 5,642.44 | |

| | | | | |
|---|---|---|---|---|
| Wells Fargo Sm. Bus. | 2,450.00 | N | 2,450.00 | |
| Midland Credit Mgt. | 4,000.85 | N | 4,000.85 | |
| TOTAL | | | 12,093.29 | |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Percent Plan.** Creditors will receive **100%** percent of their allowed claim on the Effective Date of the Plan.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6©). **This class is not impaired and is not entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

## PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS
(a) <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later, unless other arrangements are made.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Ruth Elin Auerbach | 25,000 |
| | |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b) <u>Other Administrative Claims</u>. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of

confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due. Debtor shall pay the Sonoma County Tax Collector's taxes constituting an administrative expense claim under Section 503(b)(1)(B) and/or 503(b)(1)(C) of the Bankruptcy Code in full on the Effective Date estimated at not less than $9,944.29 through December 1, 2021, which taxes continue to accrue penalties and interest until paid in full. The Debtor shall also pay the County of Sonoma $20,000.00 as required under Paragraph 5B of the Stipulated Judgment at the latest of (i) five (5) days after entry of a confirmation order; or (ii) the Effective Date.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| N/A | |
| | |

(c) <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made [monthly/quarterly], due on the [number] day of the [month/quarter], starting [month & year]. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | 1,857.32 | 4% | 1,857.32 | 1 |
| | | | | |

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 5 of 44

## PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) Executory Contracts/Unexpired Leases Assumed. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears will be paid [select one] [in full on the Effective Date] in [number] equal [monthly/quarterly] installments beginning on the first day of [month & year].

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| N/A | | | | |
| | | | | |

(b) Executory Contracts/Unexpired Leases Rejected. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| N/A | |
| | |

(b) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed [select one] [assumed/rejected].

## PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

(a) Discharge. Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) Vesting of Property. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)

-6-

provided in Part 6(f) below.

(c)  <u>Plan Creates New Obligations</u>.  Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**
(a)  <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b)  <u>Obligations to Each Class Separate</u>.  Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c)  <u>Material Default Defined</u>.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)

-7-

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 7 of 44

occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d)   Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e)   Claims not Affected by Plan.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f)   Effect of Conversion to Chapter 7.  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g)   Retention of Jurisdiction.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.


**PART 7: GENERAL PROVISIONS**
(a)   Effective Date of Plan.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be

the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b)  Disputed Claim Reserve.  Debtor will create a reserve for disputed claims.  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve shall be [select one] [returned to Debtor] [distributed pro-rata among allowed claims in this class].

(c)  Cramdown.  Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d)  Severability.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e)  Governing Law.  Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f)  Lawsuits.

   Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|-------|--------------|-----------------|-----------------|------------------------------------|
| n/a   |              |                 |                 |                                    |
|       |              |                 |                 |                                    |

(g)  Notices.  Any notice to the Debtor shall be in writing, and

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 9 of 44

will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

Dated: 1/18/2022_____

__/s/ Tyer Lease Meiggs_____
Debtor

_____
Debtor

_/s/ Ruth Elin Auerbach_____
Attorney for Debtor

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 10 of 44

**Attorney Certification**

I, Ruth Elin Auerbach, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

Added language to Part 1, regarding properties where creditors may enforce their rights, included an explanation as to the County of Sonoma claims, and to Section 3 regarding the County of Sonoma's real property tax debt.

I declare that the foregoing is true and correct. Executed this 18th day of January, 2022.

/s/ Ruth Elin Auerbach

Attorney for Debtor(s)

**Exhibit 1 - Events That Led To Bankruptcy**

The debtor owns three parcels of real estate in Sonoma County. When he purchased the properties, there were apparently unpermitted structures and other violations of Sonoma County Codes, which were not disclosed to the Debtor by the sellers. Several years later, the Debtor was sued by the County of Sonoma who was requiring him to undertake costs to remedy the violations which the Debtor could not afford. The Debtor is a landscaper, and because of wild fires and the COVID pandemic, he was unable to work, and could no longer afford the costs of litigation.

Since the filing, the Debtor has settled with the County of Sonoma and has been trying to sell the properties to pay creditors, however because of the issues with the County regarding alleged code violations, the Debtor has been unable to sell the properties. Through this plan, the Debtor will allow the secured creditors to enforce their respective liens on the properties, and will pay unsecured and priority creditors in full from the cash he has in his inherited Schwab account.

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 12 of 44

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 27951 King Ridge Road, Cazadero

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 335,000 | 1st 30,508.91* | 16,000 | | | 0.00 |
| | 2nd 600,000* | | | | |
| | 3rd | | | | |

Real Property #2: 1460 Big Barn, Cazadero

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 298,000 | 1st 41,671.46* | 24,000 | | | 0.00 |
| | 2nd 126,000 | | | | |
| | 3rd 600,000* | | | | |

Real Property #3: 23480 Fort Ross Road, Cazadero, CA

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 440,000 | 1st 37,882.90* | 32,000 | | | 0.00 |
| | 2nd 200,000 | | | | |
| | 3rd 600,000* | | | | |

**\*The County of Sonoma has a judgment lien against the Debtor in the principal amount of $600,000 for violations assessed against the three Sonoma county properties.  Of that amount, a portion may, under law, be added to the real property tax rolls, and assessed as a priority real property tax lien which would give the lien priority over the deeds of trust against the respective properties.  With respect to the Debtor's properties, the amounts so assessed by the County are $19,401.40 as to the Big Barn property, $11,625.50 as to the Fort Ross Rd. property, and $16,928.50 as against the King Ridge property.  These amounts are included in the property taxes set forth above.**

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 13 of 44

Real Property #4: Plot 8E Two Friends Road, Christiansted, VI (Debtor owns 50%)

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 125,000 | 1st 125,000 | 10,000 | | | 0.00 |
| | 2nd | | | | |
| | 3rd | | | | |

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | 57,000 | | 30,825 | 26,175 |
| Automobile #1 | 8,000 | 8,000 | 2,725 | 0 |
| Automobile #2 | 30,000 | 27,000 | 0.00 | 0 |
| Household Furnishings | 1,000 | | 1,000 | 0 |
| Jewelry | 0 | 0 | 0 | 0 |
| Equipment | 6,000 | 0 | 6,000 | 0 |
| Stocks / Investments | 0 | 0 | 0 | 0 |
| Other Personal Property | | | | |
| TOTAL | | | | 26,175 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | 0 |
| Recovery from Preferences / Fraudulent Conveyances [ADD] | 0 |
| Chapter 7 Administrative Claims [SUBTRACT] | |
| Chapter 11 Administrative Claims [SUBTRACT] | 20,000 |
| Priority Claims [SUBTRACT] | 1,857 |
| Chapter 7 Trustee Fees [SUBTRACT] | 4,667 |
| Chapter 7 Trustee's Professionals [SUBTRACT] | 10,000 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | 0 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 12,093 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |

Individual Chapter 11
Combined Plan & Disclosure Statement (Version: 7/30/12)

-14-

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 14 of 44

## Exhibit 3 - Monthly Income and Expenses

| Income | Amount |
|---|---|
| Gross Employment Income | 2,500.00 |
| Gross Business Income | 0.00 |
| Unemployment | 0.00 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | 0.00 |
| **A. Total Monthly Income** | 2,500.00 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | |
| Retirement Contributions (401k, IRA, PSP) | |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities) (Total Arrearages on Principal Residence are $_____) | 200.00 |
| Household Expenses (food) | 300.00 |
| Transportation Expenses (car payments, insurance, fuel) | 100.00 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | 100.00 |
| Alimony / Child Support | |
| Other Expenses | |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | |
| **B. Total Monthly Expenses** | 700.00 |

| **C. Disposable Income** (Line A – Line B) | 1,800.00 |
|---|---|

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | |
| Priority Claims | |
| General Unsecured Creditors: | |
| [OTHER PLAN PAYMENTS - DESCRIBE] US Trustee Post Conf Pmts | |
| **D. Total Plan Payments** | 0.00 |

Individual Chapter 11
Combined Plan & Disclosure Statement

(Version: 7/30/12)

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 15 of 44

July 30, 2012

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | 1,800.00 |

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 16 of 44

## Exhibit 4 - Effective Date Feasibility

Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---:|---:|
| A. Projected Total Cash on Hand on Effective Date | | 80,000 |
| Payments on Effective Date | | |
| Unclassified Claims | | |
| Administrative Expense Claims | 25,000 | |
| Priority Claims | 1,857 | |
| Unsecured Claims | 12,093 | |
| U.S. Trustee Fees | | |
| B. Total Payments on Effective Date | | 38,950 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | | 41,050 |

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 17 of 44

# Exhibit 5 - Investment Property Analysis

## Properties with Positive Monthly Cash-Flow: n/a
Real Property #1 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

[Add additional tables for additional real property]

Real Property #2 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

| A. Total Positive Cash Flow | |
|---|---|

## Properties with Negative Monthly Cash-Flow:
Real Property #3 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

Real Property #4 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

| B. Total Negative Cash Flow | |
|---|---|

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)

July 30, 2012

Case: 20-10616   Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 18 of 44

ROBERT H. PITTMAN, #172154
County Counsel
DIANA E. GOMEZ
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105-A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Fax: (707) 565-2624
Email: Diana.Gomez2@sonoma-county.org

Attorneys for Plaintiffs,
County of Sonoma

**ELECTRONICALLY FILED**
**Superior Court of California**
**County of Sonoma**
**7/26/2021 2:58 PM**
**Arlene D. Junior, Clerk of the Court**
**By: Alexandria Hankes, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SONOMA

| | |
|---|---|
| COUNTY OF SONOMA,<br><br>        Plaintiff,<br><br>vs.<br><br>TYLER MEIGGS,<br><br>        Defendant.<br><br>_____/ | Case No.  SCV 266355<br>Consolidated with SCV266368 and SCV266392<br><br>(Unlimited Civil)<br><br>**STIPULATED JUDGMENT AND PERMANENT INJUNCTION (Consolidated Cases SCV266368 AND SCV266392)**<br><br>Honorable Arthur Wick<br> Dept. 17 |

The parties desire to resolve the litigation filed by the County of Sonoma (hereinafter the "County") on the above 3 cases, arising out of the violations of the Sonoma County Code ("SCC"), Chapters 7, 11, 24 and 26, including abatement costs, as defined in section 1-7(d) of the SCC, civil penalties pursuant to section 1-7.1 of the SCC, and attorneys' fees arising out of these enforcement actions, by way of this this compromise agreement.

**RECITALS**

**WHEREAS**, TYLER MEIGGS ("MEIGGS"), is the owner of the following real properties located in the unincorporated area of Sonoma County:  1460 Big Barn Road, Cazadero, California, Assessor Parcel Number 107-110-014, ("the Big Barn Property"), see Grant Deed and legal description attached hereto as *Exhibit A*, and incorporated by reference;

Case: 20-10616    Doc# 124    Filed: 01/18/22    Entered: 01/18/22 15:00:52    Page 19 of 44

23480 Fort Ross Road, Cazadero, California, Assessor Parcel Number 107-150-023, ("the Fort Ross Property") see Grant Deed and legal description attached hereto as *Exhibit B*, and incorporated by reference; and 27951 King Ridge Road, Cazadero, California, Assessor Parcel Number 109-340-042, ("the King Ridge Property"), see Grant Deed and legal description attached hereto as *Exhibit C*, and incorporated by reference (collectively "Properties");

**WHEREAS**, since 2017, the County of Sonoma Permit and Resources Management Department ("Permit Sonoma) has been attempting to get the Properties into compliance with the Sonoma County Code ("SCC"), Chapters 7 (Building), 24 (Grading) and 26 (Zoning).

**WHEREAS**, the County alleges that the code violations on the Property include(d):

1. Big Barn Property:

   a. <u>Building Code Violations</u>: two unpermitted (2) sheds (VBU19-0613, VBU19-0614); non-permitted septic tank, (VBU19-0615); non-permitted dwelling unit (VBU19-0616); hazardous electrical and plumbing (VBU19-0617); four unpermitted (4) greenhouses (VBU19-0618, VBU19-0619, VBU19-0620, VBU19-0621); three (3) unpermitted cargo containers (VBU19-0622, VBU19-0623, VBU19-0624); two (2) unpermitted 500 gallon propane tanks (VBU19-0625, VBU19-0626); and Substandard housing (VBU19-0627, VBU19-0628)

   b. <u>Septic Code Violations</u> - (VWS19-0030) Septic tank at SFD, (VWS19-0031) Illegal pit toilet, leaking graywater from occupied travel trailer (VWS19-0032)

   c. <u>Zoning Code Violations</u> - Two (2) occupied travel trailers (VPL19-0666, VPL19-0667), Non-operational vehicles (VPL19-0668) and Junkyard conditions (VPL19-0669);

   d. <u>Unpermitted Cannabis</u>, approximately 600 plants (VPL19-0665);

2. Fort Ross Property:

   a. <u>Building Code Violations</u>: Building Code Violations - three (3) greenhouses (VBU19-0803, VBU19-0804, VBU-0805); unpermitted construction of a single family dwelling

(VBU19-0826); unpermitted construction of a single family dwelling (VBU19-0827); unpermitted construction of a barn (VBU19-0828); two (2) unpermitted cargo containers (VBU19-0829, VBU-19-0830); unpermitted construction of a shed (VBU-19-0831);

    b. <u>Septic Code Violation</u> - installation of a pit toilet (VWS19-0041);

    c. <u>Grading Code Violation</u> – unpermitted grading and terracing  (VGR19-0055);

    d. <u>Zoning Code Violations</u> - Junkyard conditions (VPL19-0897); Non-operative vehicles (VPL19-0899); and

    e. Unpermitted Cannabis, approximately 1000 plants (VPL19-0875); and

3. King Ridge Property:

    a. <u>Building Code Violations</u> - two (2) unpermitted greenhouses (VBU19-0806, VBU19-0807);

    b. <u>Grading Code Violation</u> – unpermitted grading and terracing of over 50 cubic feet with slopes of 2-1 ratio (VGR19-0054);

    c. <u>Septic Code Violation</u> - pit toilet (VWS19-0040);

    d. <u>Zoning Code Violations</u> - two (2) occupied travel trailers (VPL19-0895, VPL19-0896), Junkyard conditions (VPL19-0894);

    e. <u>Unpermitted Cannabis</u> (VPL19-0876); collectively (the "Violations");

**WHEREAS**, in September 2019 Permit Sonoma conducted site inspections on the Properties and observed the above violations. Notices and Orders were issued for all violations and MEIGGS was given a reasonable opportunity to abate the violations;

**WHEREAS,** when the violations were not abated as ordered, County filed Complaints To Abate A Public Nuisance; And To Enforce And Permanently Enjoin Code Violations in the Sonoma County Superior Court against MEIGGS as follows:

1. Big Barn Property: SCV266392, Filed May 1, 2020

2. Fort Ross Property: SCV266368, Filed May 4, 2020

Case: 20-10616    Doc# 124    Filed: 01/18/22    Entered: 01/18/22 15:00:52    Page 21 of 44

**3.** King Ridge Property: SCV266392, Filed May 1, 2020;

**WHEREAS,** the following violations have been abated and removed from the Properties:

1. Big Barn Property: two (2) sheds (VBU19-0613, VBU19-0614); non-permitted septic tank, (VBU19-0615); hazardous electrical and plumbing (VBU19-0617); four (4) greenhouses (VBU19-0618, VBU19-0619, VBU19-0620, VBU19-0621); two (2) cargo containers (VBU19-0622, VBU19-0623); cargo containers (VBU19-0624); two (2) 500 gallon propane tanks (VBU19-0625, VBU19-0626); Substandard housing (VBU19-0627); Substandard housing (VBU19-0628); Septic Code Violations - (VWS19-0030) Septic tank at SFD, (VWS19-0031) Illegal pit toilet, leaking graywater from occupied travel trailer (VWS19-0032); two (2) occupied travel trailers (VPL19-0666, VPL19-0667); non-operational vehicles (VPL19-0668); and Cannabis (VPL19-0665);

2. Fort Ross Property: three (3) greenhouses (VBU19-0803, VBU19-0804, VBU-0805); two (2) cargo containers (VBU19-0829, VBU-19-0830); Junkyard conditions (VPL19-0897); non-operative vehicles (VPL19-0899); and Cannabis (VPL19-0875); and

3. King Ridge Property: two (2) greenhouses (VBU19-0806, VBU19-0807); two (2) occupied travel trailers (VPL19-0895, VPL19-0896); junkyard conditions (VPL19-0894) and Cannabis (VPL19-0876);

**WHEREAS**, as of the date of the filing of the Stipulation for Entry of Judgment, the Properties continue to be in violation of the SCC as follows:

1. Big Barn Property: non-permitted dwelling unit (VBU19-0616) and junkyard conditions (VPL19-0669);

2. Fort Ross Property: construction of a single family dwelling (VBU19-0826); construction of a single family dwelling (VBU19-0827); construction of a barn (VBU19-0828); construction of a shed (VBU-19-0831); installation of a pit toilet (VWS19-0041) and unpermitted

Case: 20-10616    Doc# 124    Filed: 01/18/22    Entered: 01/18/22 15:00:52    Page 22 of 44

grading and terracing (VGR19-0055);

    3.    King Ridge Property: unpermitted grading and terracing of over 50 cubic feet with slopes of 2-1 ratio (VGR19-0054) and septic violation - pit toilet (VWS19-0040);

**WHEREAS**, on April 16, 2021, the court consolidated all 3 cases into SCV266355 and assigned the matter to Department 17 of the Sonoma County Superior Court;

**WHEREAS** on November 24, 2020, DEFENDANT MEIGGS filed an action in the United States Bankruptcy Court for the Northern District of California (Santa Rosa Division) (Case No. 20-10616-) (the "Bankruptcy Case"). Immediately upon court approval of this agreement, MEIGGS agrees to stipulate to a non-dischargeable judgment in the Bankruptcy Case in the total sum of the Compromise Amount (as described below in ¶ 5) under 11 U.S.C. § 523 (the "Bankruptcy Stipulated Judgment"), and shall cooperate with the County to the fullest extent to promptly execute such Bankruptcy Stipulated Judgment to be presented for Bankruptcy Court approval. This terms set forth herein are an express condition and material term in exchange for the County's agreement to compromise the total amount of civil penalties currently owed to County in this action;

**WHEREAS,** in order to resolve the disputes between them, the parties desire to enter into a Stipulated Judgment.

**NOW, THEREFORE**, pursuant to the Stipulation for Entry of Judgment executed by DEFENDANT MEIGGS, and filed with this Court:

**IT IS HEREBY ORDERED THAT:**

DEFENDANT MEIGGS, and persons acting on his behalf or in concert with him, and his successors, assigns, agents or principals, is now permanently enjoined and restrained from ("PERMANENT INJUNCTION"):

    1.    Maintaining or allowing others to maintain violations of the SCC including but

not limited to Chapters 7 (Building) , 11 (Grading), 24 (Septic) and 26 (Zoning) on the Properties, including:

A.    Unpermitted and Unlawful Commercial Cannabis Cultivation;

B.    Unpermitted construction;

C.    Unpermitted greenhouses;

D.    Unpermitted structures;

E.    Dangerous dwellings;

F.    Unpermitted occupied travel trailers;

G.    Unpermitted cargo containers;

H.    Unpermitted and substandard septic;

I.    Unpermitted grading;

J.    Non-operative vehicles;

K.    Junkyard conditions; and

L.    Unpermitted uses on the Property.

2.    Using or permitting others to use the Properties for unlawful commercial cannabis activities, including but not limited to, cultivation, planting, growing, harvesting, drying, curing, manufacturing, storing, or trimming of cannabis or any cannabis related operations (manufacturing of oils, etc.) unless and until a legal permit to do so is obtained from the County and any and all other regulatory agencies, including the State of California.

**IT IS HEREBY FURTHER ORDERED** that:

3.    DEFENDANT MEIGGS shall direct his respective lessees, guests and tenants, of each of the Properties, to comply with paragraphs (1) and (2) above.

4.    **Legalization of Code Violations**. DEFENDANT MEIGGS shall abate each of the remaining the Code violations on the Property as follows:

### A. **Big Barn Property**:

    1) <u>Building Code Violation</u> - non-permitted dwelling unit (VBU19-0616):

        i. DEFENDANT MEIGGS shall, submit to Permit Sonoma a complete application package to obtain either a demolition permit or permits to legalize the building code violation, together with all necessary drawings and plans, and all required permit fees, including any required building, electrical, septic, or other required applications and all supporting documents and plans no later than 90 days from the date the Stipulation for Entry of Judgment is approved by the Bankruptcy Court;

        ii. Legalization includes each and every of the following: obtaining issuance of any necessary building, sewage and septic, and approvals from the County, including paying any necessary fees, completing all necessary work required under each permit, and obtaining final inspection approval by the County. No penalty permit multiplier will be applied to this permit;

        iii. DEFENDANT MEIGGS shall diligently pursue all required County permit review processes by responding within 14 days to any requests by the County for corrections or modifications to the permit application(s);

        iv. DEFENDANT MEIGGS shall call for a final inspection 120 days after the building permit is issued;

        v. DEFENDANT MEIGGS understands that if he cannot legalize the structure as provided herein, he will remove the structure from the Property by obtaining a demolition permit within 30 days of the rejection of the building permit application. and receive a final inspection from the County within 60 days of the permit issuance for the following violations;

        vi. No penalty permit multiplier will be applied to this permit.

vii.   The foregoing notwithstanding, the Big Barn Property is currently listed for sale.  Should DEFENDANT MEIGGS obtain a buyer for the property **prior to the deadlines for abatement as set forth herein**, the buyer may undertake the correction of the violations within a reasonable period of time after acquiring the property only if said buyer agrees to and does enters into an Abatement Security Agreement with Plaintiff, prior to the sale, whereby the buyer agrees to undertake the abatement by negotiated deadlines to do so.

2)   <u>Zoning Code Violations</u>- junkyard conditions (VPL19-0669);

i.   DEFENDANT MEIGGS shall remove the violation and call for a final inspection no later than 30 days from the date the instant compromise agreement is approved by the court.

**B.  Fort Ross Property:**

1)   <u>Building Code Violations</u> -construction of a single family dwelling (VBU19-0826); construction of a single family dwelling (VBU19-0827); construction of a barn (VBU19-0828);  construction of a shed (VBU-19-0831);

i.   DEFENDANT MEIGGS shall submit to Permit Sonoma complete application package to obtain either demolition permits or permits to legalize the building code violations, together with all necessary drawings and plans, and all required permit fees, including any required building, electrical, septic, or other required applications and all supporting documents and plans no later than 90 days from the date the instant compromise agreement is approved by the court;

ii.   Legalization includes each and every of the following: obtaining issuance of any necessary building, sewage and septic, and approvals from the County, including paying any necessary fees, completing all necessary work required under each permit, and obtaining final inspection approval by the County. No penalty permit multiplier will be applied

STIPULATED JUDGMENT – COUNTY OF SONOMA v. TYLER MEIGGS
Page **8** of **17**

to this permit;

iii. DEFENDANT MEIGGS shall diligently pursue all required County permit review processes by responding within 14 days to any requests by the County for corrections or modifications to the permit application(s);

iv. DEFENDANT MEIGGS shall call for a final inspection 120 days after the building permits are issued or 60 days after a demolition permit is issued;

v. DEFENDANT MEIGGS understands that if he cannot legalize any of the structures as provided herein, he will remove that structure from the Property by obtaining a demolition permit within 30 days of the rejection of the building permit application and receive a final inspection from the County within 30 days of the permit issuance; and

vi. No penalty permit multiplier will be applied to this permit.

vii. The foregoing notwithstanding, the Fort Ross Property is currently listed for sale.  Should DEFENDANT MEIGGS obtain a buyer for the property **prior to the deadlines for abatement as set forth herein**, the buyer may undertake the correction of the violations within a reasonable period of time after acquiring the property only if said buyer agrees to and does enters into an Abatement Security Agreement with Plaintiff, prior to the sale, whereby the buyer agrees to undertake the abatement by negotiated deadlines to do so.

2) Septic Code Violation - installation of a pit toilet (VWS19-0041)

i. DEFENDANT MEIGGS shall remove the violation and call for a final inspection no later than 30 days from the date the Stipulation for Entry of Judgment is filed; and

3) Grading Code Violation - unpermitted grading and terracing (VGR19-0055);

i. DEFENDANT MEIGGS shall, to the extent he has the funds to do so, legalize the grading by restoring the Property to its pre-existing condition by: restoring the

original contours; removing the fill, restoring the natural drainage conditions, replanting native vegetation and conducting any ecological restoration work identified by County. Such legalization shall include:

ii. Submit to Permit Sonoma a complete grading permit application along with all required engineering plans and reports, and restoration plans, to abate the violations, within 90 days from the date the Stipulation for Entry of Judgment is filed;

iii. Legalization includes paying any necessary fees, completing all necessary work required under the permit, and obtaining final inspection approval by the County;

iv. DEFENDANT MEIGGS shall contact Permit Sonoma to request a final inspection the grading permit application no later than 90 days from the date the grading permit is issued;

v. DEFENDANT MEIGGS shall diligently pursue all required County permit review processes by responding within 14 days to any requests by the County for corrections or modifications to the permit application(s).

vi. County agrees to not unreasonably withhold granting an extension of the 90-day timeframe upon receipt of a written request from DEFENDANT MEIGGS which sets forth specific reasons why a final inspection was not requested from County as set forth herein; and

vii. No penalty permit multiplier will be applied to this permit.

viii. The foregoing notwithstanding, the Fort Ross Property is currently listed for sale. Should DEFENDANT MEIGGS obtain a buyer for the property prior to the deadlines for abatement as set forth herein, the buyer may undertake the correction of the violations within a reasonable period of time after acquiring the property only if said buyer agrees to and does enters into an Abatement Security Agreement with Plaintiff, prior to the sale,

Case: 20-10616    Doc# 124    Filed: 01/18/22    Entered: 01/18/22 15:00:52    Page 28 of 44

whereby the buyer agrees to undertake the abatement by negotiated deadlines to do so.

**C. King Ridge Property:**

1) <u>Grading Code Violation</u> unpermitted grading and terracing of over 50 cubic feet with slopes of 2-1 ratio (VGR19-0054) :

     i.     DEFENDANT MEIGGS shall legalize the grading by restoring the Property to its pre-existing condition by: restoring the original contours; removing the fill, restoring the natural drainage conditions, replanting native vegetation and conducting any ecological restoration work identified by County.  Such legalization shall include:

     ii.     Submit to Permit Sonoma a complete grading permit application along with all required engineering plans and reports, and restoration plans, to abate the violations, within 90 days from the date the Stipulation for Entry of Judgment is filed;

     iii.     Legalization includes paying any necessary fees, completing all necessary work required under the permit, and obtaining final inspection approval by the County;

     iv.     DEFENDANT MEIGGS shall diligently pursue all required County permit review processes by responding within 14 days to any requests by the County for corrections or modifications to the permit application(s).

     v.     DEFENDANT MEIGGS shall contact Permit Sonoma to request a final inspection the grading permit application no later than 90 days from the date the grading permit is issued.

     vi.     County agrees to not unreasonably withhold granting an extension of the 90-day timeframe upon receipt of a written request from DEFENDANT MEIGGS which sets forth specific reasons why a final inspection was not requested from County as set forth herein; and

     vii.     No penalty permit multiplier will be applied to this permit.

STIPULATED JUDGMENT COUNTY OF SONOMA V TYLER MEIGGS
Page **11** of 17

viii.    The foregoing notwithstanding, the King Ridge Property is currently listed for sale.  Should DEFENDANT MEIGGS obtain a buyer for the property prior to the deadlines for abatement as set forth herein, the buyer may undertake the correction of the violations within a reasonable period of time after acquiring the property only if said buyer agrees to and does enters into an Abatement Security Agreement with Plaintiff, prior to the sale, whereby the buyer agrees to undertake the abatement by negotiated deadlines to do so.

2)  Septic Code Violation - pit toilet (VWS19-0040);

i.    DEFENDANT MEIGGS shall remove the violation and call for a final inspection no later than 60 days from the date the Stipulation for Entry of Judgment approved by the Bankruptcy Court;

**IT IS FURTHER ADJUDGED AND DECREED** that:

5.    **Compromise Amount.** DEFENDANT MEIGGS shall pay the County of Sonoma the total sum of **$600,000.00** (SIX HUNDRED THOUSAND DOLLARS) in full settlement and compromise of these 3 actions and in release and discharge of any and all claims and causes of action made in these actions as follows:

A.    Payment, except as set forth below, shall be made from the proceeds of sale of each of the properties, pursuant to the Debtor's Plan of Reorganization ("Plan), which Plan shall be confirmed by a final, non-appealable Bankruptcy Court order no later than August 31, 2021.  If the Plan is not confirmed by August 31, 2021, the Debtor agrees to immediately stipulate to relief from the automatic stay under 11 U.S.C. Section 362(d) authorizing the County to exercise any and all rights to enforce its abstract of judgment lien pursuant to applicable state law and will cooperate with the County to the fullest extent to allow the County to obtain Bankruptcy Court approval of such stipulation.  The foregoing notwithstanding, if the hearing on confirmation of the Debtor's Plan cannot be calendared by August 31, 2021, then the **confirmation date and relief**

**from stay date shall be extended for 30 days** to September 30, 2021.  Payments shall be sent to:

> County of Sonoma
> County Counsel
> 575 Administration Drive, Rm 105A,
> Santa Rosa, CA 95403

B.     Within 5 days of confirmation of the Debtor's Plan, Defendant Meiggs shall pay County of Sonoma, Twenty Thousand Dollars ($20,000.00), which shall be credited towards the total amount owed. The foregoing shall be reflected in the Debtor's Plan to be filed with the Court in accordance with Paragraph 5.A., above.  Nothing herein shall be intended to limit or alter any and all of the County's rights and remedies arising under the Plan, including, without limitation, the County's rights to oppose or respond to the Plan.

C.     If any of the Properties are to be sold prior to the abatement of all code violations and/or full payment of all monies owed per the Judgment,  DEFENDANT MEIGGS agrees to:

1)     Notify County within 48 hours of the opening of any escrow;

2)     Include payment to the County in an Order of the Bankruptcy Court approving the sale;

3)     Give proper instructions to the Escrow Agent for payment of the full Amount, including any Penalty Payments, which are due and owing to County at time of the sale of the Properties; and

4)     Make this Judgment part of the Escrow instructions to any interested buyers, or make this Judgment and all its provisions, duties and responsibilities explicitly known to any potential buyer.

6.     **Delinquency**.  If the County does not receive payment as set forth in Section 5, interest shall accrue at the legal rate of ten percent (10%) per annum on any unpaid amount of the

Compromise Amount and/or Penalty Payments and costs may be assessed against the Properties and may be collected in the same manner as taxes, as provided by Government Code section 25845 and SCC section 1-7(d).

7. **Effect on Property Taxes**. County is authorized to assess all costs and attorneys' fees against the Property and to collect the same in the same manner as taxes as provided by Government Code section 25845 and by SCC sections 1-7 and 1-7.1; and 1-7(d).

8. **Breach.**

A.      If DEFENDANT MEIGGS fails to pay the COMPROMISE AMOUNT pursuant to his Chapter 11 Plan and Paragraph 5 of this Agreement, this will be considered a breach of this Stipulated Judgment and Permanent Injunction and it is ordered that:

i.      Any unpaid portions of the total amount still owing are immediately due and payable to the County; and

ii.      County may file against DEFENDANT MEIGGS a motion to enforce the judgment, or any other remedy to compel compliance with all terms of this Judgment.   The non-prevailing party shall pay the prevailing party all of its attorney's fees and costs associated with bringing such action(s).

B.      If DEFENDANT MEIGGS fails to meet any of the deadlines to abate the violations as set forth in Paragraph 4, and/or in the manner set forth therein, then DEFENDANT MEIGGS will be in breach of this Stipulated Judgment and:

i.      DEFENDANT MEIGGS shall pay the County a penalty of $200.00 per day, per violation (the "Penalty Payments") beginning on the day of the breach and continuing to accrue daily until the Property is brought into code compliance and each and every violation is legalized and abated. The Penalty Payments for the violation will end only when DEFENDANT MEIGGS has received a final approval from the County for all of the Violations.

ii.    County may file against DEFENDANT MEIGGS a civil contempt action, a motion to enforce the judgment, a petition to appoint a receiver, or any other remedy to compel compliance with all terms of this Judgment.   The non-prevailing party shall pay the prevailing party all of its attorney's fees and costs associated with bringing such action(s).

9.    **Recordation**. The Abstract of Judgment may be recorded against each of the Properties immediately after filing of this Stipulated Judgment with the Court.

10.    **Release of Liens and Satisfaction of Judgment**.  Within ten (10) business days of receiving the final payment of the COMPROMISE AMOUNT as set forth herein, and any Penalty payments due, and only if the Property is in complete compliance with the Sonoma County Codes and all violations have received final inspection, the County will provide the property owner with all necessary written release of lien forms for them to record in order to release all code enforcement liens recorded against the Property, for the violations as pled in each of the Complaints.  County shall also file a release of the Lis Pendens and a Satisfaction of Judgment.

11.    **Authority to Enter**. The County and its officers, agents or employees, or persons duly authorized to act on its behalf, may enter the Properties during normal business hours (8:00 a.m. to 5:00 p.m., Monday through Friday) upon two (2) business days email notice to DEFENDANT MEIGGS at tylermeiggs@yahoo.com, with a copy to his bankruptcy attorney, Ruth Auerbach at attorneyruth@sbcglobal.net, notifying him of the date and time of inspecting the Properties for compliance with this Stipulated Judgment.  The Property shall not be locked and shall be accessible to the County at the date and time set forth above.

A.    No individual need be present on the Property during the inspection;

B.    The inspection shall take place during normal business hours.

C.    If the County provides proper noticing as set forth above and is not able to gain access to the Property, the DEFENDANT MEIGGS agrees to pay all the County's costs in

attempting an inspection; and

       D.     The Sonoma County Sheriff may send such deputies as Code Enforcement deems appropriate to enforce this directive and to protect and supervise the aforementioned County officers, agents, employees, and persons duly authorized to act on its behalf.

       E.     DEFENDANT MEIGGS shall hold County and its officers, agents, employees, and persons duly authorized to act on its behalf harmless from and against any and all claims for trespass or conversion or other causes of action directly related to and within the scope of the abatement of the Properties by County pursuant to this section.

       12.     **County Authority to Abate**. In the event DEFENDANT MEIGGS does not comply with this order and any of the Properties is not in compliance with all codes and ordinances of the Sonoma County Code, then upon 30 days' notice to abate the violations and only if the violations remain unabated:

       A.     The Director of Permit Sonoma (the "Director"), or a private contractor employed by the Director or by the Sonoma County Board of Supervisors, or by both, be authorized to enter the Properties, upon 48 hours written notice, to remove all violations and restore the Properties to a lawful condition under the ordinances of the County of Sonoma; and

       B.     The Sonoma County Sheriff may send such deputies as the Director deems appropriate to protect and supervise the aforementioned County officers, agents, employees, and persons duly authorized to act on its behalf; and

       C.     Should the County incur any abatement costs of performing the work described above, those costs shall be treated as an administrative priority claim in DEFENDANT MEIGGS' bankruptcy;

       D.     If the bankruptcy estate of DEFENDANT MEIGGS does not have sufficient funds to pay the administrative claim for abatement costs upon the effective date of the

Case: 20-10616    Doc# 124   Filed: 01/18/22   Entered: 01/18/22 15:00:52   Page 34 of 44

Chapter 11 Plan, those funds may be assessed against the Property and may be collected in the same manner as taxes, as provided by Government Code §25845 and SCC §1-7, or may be recorded against the subject Properties by way of a Supplemental Abatement Lien; and

   E. DEFENDANT MEIGGS and his successors, assigns, agents and each of them, shall hold Sonoma County and its officers, agents, employees, and persons duly authorized to act on its behalf harmless from and against any and all claims, demands, liabilities, costs, expenses, actions, and causes of action that may be asserted by any person or entity, including DEFENDANT MEIGGS, arising out of or in connection with the performance of this enforcement actions.

  13. **Jurisdiction**. The Sonoma County Superior Court shall retain jurisdiction over this matter pursuant to Code of Civil Procedure Section 664.6.

  14. **Successors.** The herein Judgment shall apply to DEFENDANT MEIGGS and his successors, assigns, agents or principals.


  **IT IS SO ORDERED:**


Dated: 7/26/2021 , 2021   _____

       JUDGE OF THE SUPERIOR COURT

Case: 20-10616 Doc# 124 Filed: 01/18/22 Entered: 01/18/22 15:00:52 Page 35 of 44

# EXHIBIT A

Case: 20-10616    Doc# 124    Filed 01/16/22    Entered 01/18/22 15:00:52    Page 36 of 44

EXHIBIT 16 Page 18 of 26

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL DOCUMENT TO:**
Tyler Meiggs
P.O. Box 2073
Guerneville, CA 95446



**2015021063**

Official Records Of Sonoma County
William F. Rousseau
03/17/2015 08:25 AM
FIRST AMERICAN TITLE CO.

**DEED 2 Pgs**

Fee: $26.00
County Tax: $357.50

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 107-110-014                                      File No.: 4903-4796975 (TCE)

# GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $357.50; CITY TRANSFER TAX $;
SURVEY MONUMENT FEE $

[  X  ]   computed on the consideration or full value of property conveyed, OR

[     ]   computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,

[  X  ]   unincorporated area;  [ ] City of **Cazadero**, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Steven Ginesi, an unmarried man**

hereby GRANTS to **Tyler Meiggs, a single man**

the following described property in the unincorporated area of the County of **Sonoma**, State of **California**:

> **PARCEL ONE:**
>
> **LOT 4, AS SHOWN UPON THAT CERTAIN MAP ENTITLED PARCEL MAP NO. 160.722, FILED FOR RECORD JUNE 22, 1977 IN BOOK 253 OF MAPS, PAGES 39 TO 46, SONOMA COUNTY RECORDS.**
>
> **PARCEL TWO:**
>
> **EASEMENTS FOR RIGHT OF WAY AND UTILITY PURPOSES OVER THE 60 FOOT RIGHT OF WAY, AS SHOWN ON SAID PARCEL MAP NO. 160.722.**
>
> **EXCEPTING THEREFROM THAT PORTION LYING WITHIN PARCEL ONE.**

Mail Tax Statements To: **SAME AS ABOVE**

EXHIBIT 16, Page 19 of 26

Grant Deed - continued

Date: **03/13/2015**

A.P.N.: 107-110-014

File No.: 4903-4796975 (TCE)

Dated: **March 13, 2015**

Steven Ginesi

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _California_ )SS
COUNTY OF _Sonoma_ )

On _March 13, 2015_ , before me, _T. C. Escher_ , Notary Public, personally appeared _Steven Ginesi_

_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _T. C. Escher_

T. C. ESCHER
Commission # 1981655
Notary Public - California
Sonoma County
My Comm. Expires Jul 8, 2016

NNA1    NNA1

*This area for official notarial seal*

# EXHIBIT B

EXHIBIT B Page 21 of 26

RECORDING REQUESTED BY:
First American Title Company

MAIL TAX STATEMENT
AND WHEN RECORDED MAIL DOCUMENT TO:
Tyler L. Meiggs
PO Box 2073
Guerneville, CA 95446

**2018025632**

Official Records Of Sonoma County
William F. Rousseau
04/16/2018 08:13 AM
FIRST AMERICAN TITLE COMPANY

DEED 2 Pgs

Fee: $27.00
County Tax: $352.00

PAID



Space Above This Line for Recorder's Use Only

A.P.N.: 107-150-023-000                                                      File No.: 4903-5665865 (TCE)

# GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX **$352.00**; CITY TRANSFER TAX $;
SURVEY MONUMENT FEE $ 10

[  x  ]  computed on the consideration or full value of property conveyed, OR

[     ]  computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,

[  x  ]  unincorporated area; [ ] City of **Cazadero**, and

EXEMPT FROM BUILDING HOMES AND JOBS ACTS FEE PER GOVERNMENT CODE 27388.1(a)(2)

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Drew Wanko, a single man**

hereby GRANTS to **Tyler L. Meiggs, a single man**

the following described property in the unincorporated area of the County of **Sonoma**, State of **California**:

> **PARCEL 14, AS INDICATED ON THAT CERTAIN RECORD OF SURVEY RECORDED MARCH 27, 1970 IN BOOK 143 OF MAPS, AT PAGES 1 THROUGH 7, INCLUSIVE, OFFICIAL RECORDS OF SONOMA COUNTY.**

Mail Tax Statements To:  **SAME AS ABOVE**

EXHIBIT 16 Page 22 of 26

Grant Deed - continued

Date: **04/03/2018**

A.P.N.: 107-150-023-000

File No.: 4903-5665865 (TCE)

Dated: April 03, 2018

_____
Drew Wanko

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF _California_ )SS

COUNTY OF _Sonoma_ )

On _April 3, 2018_ before me, _Erin Ford_ , Notary Public, personally appeared _Drew Wanko_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Signature

*This area for official notarial seal.*

ERIN FORD
Commission # 2069020
Notary Public - California
Marin County
My Comm. Expires Jun 17, 2018

# EXHIBIT C



**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL DOCUMENT TO:**
Tyler L. Meiggs
P.O Box 2073
Guerneville, CA 95446

**2013113208**

OFFICIAL RECORDS OF
SONOMA COUNTY

FIRST AMERICAN TITLE CO. WILLIAM F ROUSSEAU
11/27/2013 01:31 DEED       **2**     PGS
RECORDING FEE: $26.00
COUNTY TAX:       $170.50
PAID



Space Above This Line for Recorder's Use Only

A.P.N.: 109-340-042-000                    File No.: 2306-4523606 (DCL)

# GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $170.50; CITY TRANSFER TAX $;
SURVEY MONUMENT FEE $10.00

[        ]  computed on the consideration or full value of property conveyed, OR

[        ]  computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,

[   X   ]  unincorporated area; [  ] City of **Cazadero**, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Peter G. Korwin, a single man**

hereby GRANTS to **Tyler L. Meiggs, a single man**

the following described property in the Unincorporated area of **Cazadero**, County of **Sonoma**, State of **California**:

**PARCEL ONE:**

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 9 NORTH, RANGE 12 WEST, M.D.B. & M.

**PARCEL TWO:**

THE NORTH HALF OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 9 NORTH, RANGE 12 WEST, M.D.B. & M.

**PARCEL THREE:**

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 32, TOWNSHIP 9 NORTH, RANGE 12 WEST, M.D.B. & M.

EXCEPTING THEREFROM THOSE PORTIONS OF SECTION 32 EXCEPTED AND DESCRIBED IN EXHIBIT "B" IN A DEED FROM BOSWELL B. JONES AND WIFE TO MOLALLA FOREST PRODUCTS CORPORATION, RECORDED IN BOOK 2458 PAGES 655-662 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SONOMA COUNTY, CALIFORNIA.

Grant Deed - continued

Date: **11/21/2013**

A.P.N.: 109-340-042-000

File No.: 2306-4523606 (DCL)

Dated: **11/21/2013**

_____
Peter G. Korwin

STATE OF ~~CALIFORNIA~~)SS
COUNTY OF ~~CONTRA COSTA~~

On ~~NOVEMBER 25 2013~~ before me, ~~GLORIA S. LARSEN~~ , Notary
Public, personally appeared _____ ~~PETER G. KORWIN~~ _____
_____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

My Commission Expires: ___2\5\15___

This area for official notarial seal

Notary Name:_____

Notary Registration Number:_____

GLORIA S. LARSEN
COMM. #1921150
Notary Public California
CONTRA COSTA COUNTY
My Comm. Exp. FEB 5, 2015

Notary Phone:_____

County of Principal Place of Business:_____